We have one case on this calendar and that case is Alliance for Open Society versus United States Agency for International Development Council. Good morning, Your Honors. May it please the Court, Benjamin Torrance, United States Attorney's Office of the Southern District of New York on behalf of the defendants. Following the Supreme Court's decision in 2013 in this case, the policy requirement that's at issue here does not apply to U.S. organizations. So that means that every organization, every U.S. organization, is free to speak however it wishes on matters of prostitution and sex trafficking. And there will be no repercussions for its federal funding if it does so. The only organizations that must abide by the policy requirement in the statute are foreign organizations. But of course, as is conceded here, foreign organizations have no First Amendment protection. They have no First Amendment protection. There's no impediment to a . . . Is that about foreign affiliates of U.S. organizations? We believe any foreign organization is not protected by . . . Well, I think the issue is foreign affiliates, not foreign organizations that start from . . . that have no connection to an American NGO. Isn't that correct? The issue is the foreign affiliates, yes, but I think that the plaintiffs have conceded that as foreign organizations, they themselves lack First Amendment protection. The theory that the plaintiffs are advancing now is that applying the otherwise valid policy requirement to foreign organizations infringes the domestic organization's First Amendment rights. And of course, we do not . . . They got that. They reached that conclusion by reading the Supreme Court's decision. You've read it, right? We've read the Supreme Court's decision. They've read the Supreme Court's decision incorrectly. Sorry? They've read the Supreme Court's decision incorrectly. The Supreme Court's decision does not hold that foreign affiliates or any foreign organization . . . They talked about putting domestic NGOs in a position of evident hypocrisy. That was the language, very strong language. The starting point of that discussion was that if the policy requirement as a speech restriction is going to be applied to the U.S. organization, that infringes the U.S. organization's First Amendment rights. Then the government argued that we can alleviate that infringement on First Amendment rights by allowing them to speak through an affiliate. It doesn't matter if it's a foreign or a domestic affiliate, but our solution, the government's solution, was allow them to speak through an affiliate. And the Supreme Court said that won't work. It won't work if the affiliate is distinct from the U.S. organization that has to bear the burden of this policy requirement because then the U.S. organization isn't truly speaking through the affiliate. And it doesn't work if the foreign affiliate is close to the U.S. organization because then it's speaking out of both sides of its mouth. Look, if I'm Planned Parenthood U.S. and I have a right to say, First Amendment right to say one thing about these matters, I mean, as I read the Supreme Court decision in backing up from the evident hypocrisy, which my First Amendment right is abridged if my affiliate has to say something different. That's what they were talking about by evident hypocrisy. That infringes my First Amendment right. I cannot agree with that, that that's what they were talking about. What they were talking about is if, you have to start with that premise, if the policy requirement is applied to a imputation, the problem of evident hypocrisy becomes a problem and defeats the government's proposed solution to that burden on the First Amendment rights. But that's not the case we're dealing with here. Now, we don't need a workaround to the burden on First Amendment rights. We don't need a way of alleviating that infringement on First Amendment rights because there is no initial burden on First Amendment rights. If the hypothetical organization Your Honor mentions wants to speak about prostitution or sex trafficking, they can just do so with no repercussions for their federal funding. They can say whatever they want and they can also get the money. And that's what distinguishes this case from the Supreme Court's decision. You should petition the Supreme Court to rehear. We think the Supreme Court was quite clear about what it was talking about. So, it appears that we have a disagreement with Your Honor on that. Why don't you have a straighter shot to your result? Well, the Supreme Court, I think if you take the paragraphs that it's looking at, it starts with that premise. And we think that that distinction, that saying that it's no longer applying to the U.S. organizations directly and the U.S. organizations can do what they want with their own funds, that takes it out of that case and puts it squarely in the camp of this Court's decisions in Planned Parenthood and Center for Reproductive Law, as well as a similar decision from the D.C. Circuit and DKT Memorial. And of course, what those cases held is that there's no constitutional issue exactly for that same reason, because the domestic organization is free to speak its mind on its own dime. It's free to say whatever it wants. And if you look at the Center for Reproductive Law case, the allegations in that case is all sorts of infringements on speech, infringements on their ability to advocate, to publish, to speak, to collaborate. And this Court said none of that matters, because as long as the domestic organization is not subject to that infringement on speech, only the foreign organization is subject, exactly like in this case, then it doesn't matter what all those are because they can speak directly. They can use their own funds to say what they want on this matter. Now, as I understand your position, and simply put, all the litigation which preceded and included the Supreme Court's opinion in this matter dealt with the application of the policy restriction as to domestic NGOs. And the foreign NGOs came up only in the context of your offering an alternative in your then hope of applying the restriction to domestic NGOs, but giving them the alternative option of expressing a different view via affiliates. And that didn't work. And the District Court, this panel, and the Supreme Court were focused only on the invalidity of applying the policy requirement to domestic NGOs. We fully agree with that, Your Honor. And you can see that from the very first sentence of the Supreme Court's description of the case, where they say the respondents before them are domestic NGOs that are working overseas. The plaintiffs say that, oh, the Supreme Court must have been focused on foreign organizations because everyone knew that the work being conducted was foreign affiliates because the work being conducted was overseas. But that doesn't follow. The Supreme Court expressly recognized that the domestic NGOs were what were before them, and that they were, in fact, working overseas. It's never been in dispute that the work here goes on overseas. But there's not a word in the Supreme Court's opinion about foreign affiliates or the location of anything except in describing the case as involving domestic NGOs. And this- But you're objecting to Judge Morero's decision, which said that it applies now to foreign and domestic affiliates. The rule that the policy requirement is unconstitutional should not apply to foreign organizations, whether or not affiliated with a domestic organization. And in fact, he had an order to show cause that it applies to other NGOs besides the plaintiffs. He did. And, you know, we have some- Am I right that application or not to foreign NGOs arose for the first time in approximately 2014, 2015, after the Supreme Court had heard this case? When you all began bickering in whatever exchanges were then taken as to whether or not the policy requirement should be imposed on foreign NGOs, including foreign affiliates? First time it was raised in any court was in the fall of 2014. That's correct. So that issue is before us, but in a totally different context, as had been in the prior decisional context. That's absolutely right. And this court actually made that clear in its prior decision when it distinguished one of the cases we rely on today, DKT Memorial, as saying that case involves foreign organizations. This case only involves domestic organizations. So this court was explicit that it was only considering domestic organizations, as was the Supreme Court. There's just nothing in the record that suggests and certainly- Did the case predate the Supreme Court opinion? The DKT Memorial? Yes, it certainly did. So the Supreme Court decision changed the land? We don't think it did. And to reach that conclusion would not only require that the Supreme Court effectively overruled that decision and this court's two decisions to the same effect, but it would really effectively require the court to say that the AOSI decision in this case overruled the very bedrock of saying that foreign organizations don't get First Amendment protection, because that's the practical effect of the district court's ruling. All they have to do, any foreign organization, all it has to do to obtain First Amendment protection is form some affiliation, however that's defined. And there's a huge line drawing problem here, too, in terms of how to define what's clearly identified and who is an affiliate. But all they have to do is fit within whatever the definition is, and then they're suddenly protected by the First Amendment. As long as they have an NGO that is affiliated with them. They can't just start up by themselves, silly generous. I don't think that any, well, I don't see any barrier to that if the court were to announce a rule that affiliates- Foreign affiliate means it's affiliated with someone. Sure. And all they have to do is say, okay, now we're affiliated. They can make a phone call and say, we'd like to form an affiliation with you. There's just nothing in the district court's rule that would prevent that. And again, the district court's rule would implicate huge line drawing problems of exactly who gets this level of protection, who is clearly identified. Fair enough. You've reserved three minutes for rebuttal. We'll hear from the alliance. Thank you. May it please the court. My name is David Bowker, appearing on behalf of plaintiffs appellees, dozens of NGOs that fight HIV AIDS overseas. As the panel is aware, the Supreme Court struck down the policy requirement as unconstitutional because of the First Amendment violations- As it applies, as it applies to domestic NGOs. Is it that correct? That is absolutely correct, Your Honor. Our case is all about the rights of domestic NGOs and the violations of those rights when the government attempts to impose this policy requirement on, on those US organizations and on their affiliates. But the context is now totally different. In the, the entirety of the litigation leading up to and through the Supreme Court's opinion was the following, and you tell me if I'm wrong, a domestic NGO against which, that includes your, all your clients, against which the policy requirement was being imposed. Their speech was clearly being altered by the policy requirement. The government offered an alternative, create affiliates through which you can do what you would like. Everyone, including the Supreme Court, said that will not do. You may not impose the restriction on a domestic NGO. Is that correct? What I have said up to this point? That's correct, Your Honor. And I'd like- And, and, then the circumstance changed. When you all began debating after the Supreme Court rule whether or not the requirement may be imposed upon foreign NGOs. Your Honor, that- That was raised there for the first time. No, no, Your Honor. Why am I wrong there? I'm sorry. The government has misspoken about that. Well, you tell me where I'm wrong in saying that. Let me point you, let me point you to the record here. At oral argument, at the Supreme Court, at the Supreme Court, Justice Kennedy says, because, let me give you some background. We had put into the record all the information about how our organizations operate, which is they have clearly identified affiliates in all of the places where they fight this disease, all over the world. In, for some organizations, like CARE, it's in 28 different in the toughest places through their foreign affiliates. That's in the- Whether they're fighting or writing or speaking, that's irrelevant. They're espousing the same position. So, so through foreign affiliates. And what we said is the government's solution does not work here for two reasons. One, this policy requirement cannot be cabined. It can't be confined. The court agreed with you. The court absolutely agreed. And two, as a practical matter- And they said you cannot impose the restriction. As a practical matter- And the restriction fell. So you all can take the money and say whatever you'd like to say. I'm going to get to your point, which is- But get to the point of why it is that the restriction can't be imposed upon foreign NGOs. The government said here, now, today, that this was never raised. Well, it's raised in all the declarations and at oral argument at the Supreme Court. Justice Kennedy says, I have the same concerns that Justice Ginsburg expressed about the difficulty of simply creating structures in foreign countries. Justice Ginsburg says, but you know that getting an NGO, a I mean, to take a concrete example, look what happened about a year and a half ago in Egypt when the U.S. NGOs were indicted for criminal, for not complying with the permit requirements of that country. And we went on to argue, we went on to argue- What does that have to do with the United States government offering its money to a foreign entity for use in a foreign land but imposing some restriction on it? They have rights. They do not have their own constitutional rights. And you now have the right because the restriction has been removed from you. So, Your Honor, here we can be guided by the reasoning of the Supreme Court. And I think this- Oh, now it's the reasoning of the Court. Well, Your Honor, let me get- You can't point to any language in the Court's opinion that supports you. Absolutely we can. What the Court said at 2331 and 2332 is that this policy requirement cannot be cabined to a foreign affiliate, sorry, to an affiliate, to an affiliate, recognizing that all the affiliates are overseas. It cannot be cabined because the problem is when the care standing here and care standing here. They literally share the same name, the same identity, the same brand, the same mission. What the Court said is when that is the case, you have the problem when you impose the policy requirement on that affiliate, regardless of where it's located, whether it's Tanzania, Bangladesh, India, or New Jersey. When you impose it on an affiliate, you have the problem of what the Court said is evident hypocrisy. The U.S. organization can- The Court said that won't work. Exactly. It's obvious. Exactly. And they said you cannot have your right taken away by requiring you to make this policy statement. You're free of all of that. Well, but that's just- Now, tell me if I'm wrong. Tell me if I'm wrong about this. Your Honor, if I may on this- Go ahead. On this discussion, we are not talking about a cause of action for First Amendment violations arising from the imposition of this policy requirement on foreign affiliates. That's not what's happening here. We have the Supreme Court striking down a statute because of injuries to our clients and the District Court fashioning a remedy for that violation. And the remedy must solve not only the violations, but according to this Court in Cooper, the harm. The violations plus the harm. And the harm- Precisely all of that happened. Precisely all of that happened in Planned Parenthood and in CRLP, if I have the initials correct. As the government and the Court, Supreme Court, both recognize Planned Parenthood did not involve clearly identified organizations. Planned Parenthood is U.S. organizations attempting to bootstrap rights onto foreign organizations that have no affiliation. Independent- Can you explain to me why you believe that this requirement that the government is advocating for violates the First Amendment rights of the domestic parent? Yes. So the problem is this. When the government imposes this policy requirement on care overseas, that is care talking. And the government recognized it in its affiliate guidelines when it said, well, when we want to impose it, when we want to impose the policy requirement on organizations, anyone who says anything different, we're going to require separation and different identity because otherwise there's an upstream attribution problem from the affiliate- When you say upstream attribution, what do you mean? What the government said when the shoe was on the other foot is we have to have you separate from your affiliates because if you're not separate, if you don't have separate names and separate legal identities, there will be attribution from your affiliate to you, the U.S. organization, and back to us, the U.S. government. Well, if that's an attribution problem, imagine what it is when it's care and care. And when you have care organization in the U.S. and care organization overseas, the attribution is direct. And what the Court realized is you can't make people speak out of two sides of their mouth without hurting the U.S. organization. Why do you think the Supreme Court decision addressed that problem? So the Supreme Court said, we're sorry, U.S. government, what you've proposed to fix these constitutional violations is no fix at all because the injury remains in evident hypocrisy. And all we're saying here, the injury to the U.S. organization, the injury to the U.S. organization remains because of the problem of evident hypocrisy. The result of that was to eliminate the requirement on the domestic organization. So from that point forward, they could not impose that requirement on the domestic organization. It was free to take the money and say whatever it wanted to, as was the case in the two prior Second Circuit cases. Indeed, then Judge, now Justice Sotomayor, recognized that when she wrote the second case and said Planned Parenthood was still the law. And even if the harm was more manifest, which I suggest you don't make that quite clear here, Planned Parenthood was still good law. What did she say to change that? Well, Planned Parenthood deals with an entirely different issue, which is, can you restrict a totally independent foreign organization from doing certain things without... All right. That means you don't know how independent your organizations are. Indeed, your papers are full of descriptions such as the affiliates are foreign incorporated. They are legally separate. And then you rely on brand and logo so that at bottom, a foreign entity can take United States dollars and refuse to adopt whatever vocalized conditions the United States government cares to impose because they can say, well, we are somehow affiliated with the United States entity and they want to say something different. No, no, Your Honor. Your Honor, the Supreme Court understood all of these facts when it struck down the policy requirement as unconstitutional. It did not say... Not the foreign entity. Well, they were looking at the foreign entities... Now we have the opposite case. They were looking at the foreign entities when they described the harm. The harm of evident hypocrisy is real. And let me explain to you the facts because I think they're... How do you know they were looking at the foreign entity? Did they tell us? Well, the colloquy with Justice Kennedy is quite clear that the concern... Where is the writing to that effect? Well, because I think the Supreme Court understood that it doesn't matter where the affiliate is located... They understood the facts before them and the facts were whether or not the requirement could be imposed on a domestic organization. They said that can't be done and it can't be done via the guidelines which your colleagues were offering at that time. Your Honor, there isn't a single domestic affiliate in the factual record. Not one. They're all foreign. All of them. And so when the government was talking about affiliates and talking about the problem of evident hypocrisy, it necessarily was talking about foreign affiliates. But even if it wasn't, even if it wasn't, the reasoning is the same. When Kerr speaks and Kerr speaks, the attribution is plain. What's the relationship between Kerr and Kerr? The relationship... Are they the same corporate entity? No, of course not. They're separate. How? I'm sorry? How? That's not in the record. Yes, it is in the record, Your Honor. And let me point you to the record where it can be found. At J.A. 70, Kerr is a member of Kerr International, a federation of 12 other Kerr associations where non-profit members incorporated separately in, and then it lists a whole list of foreign countries through which Kerr operates and does its work. And the problem here is... What's the corporate relationship between your clients and their foreign affiliates? These are part of a corporate federation. There is a federation called Kerr International. Kerr U.S. is a member of that federation, as are all of the Kerr organizations separately incorporated overseas. And the problem, and I want to get this out, Your Honor, because I think it may change your thinking. As a factual matter, the way Kerr fights this disease, and this is true of many, many, many of our clients, is that when money comes into the U.S. organization, that money gets distributed out to a network of foreign affiliates so that they can fight the disease on the ground in these countries. If what the government says is right, and from our view, they're re-litigating arguments they made in the Supreme Court. If what they say is right, when Kerr U.S. gets that money and gives it to its affiliates to fight the disease overseas, they're going to have to live with those affiliates taking the pledge and generating evident hypocrisy for the U.S. organization. That is precisely what the Supreme Court said cannot happen. It's not a solution to the First Amendment harm when you do that to a U.S. organization. And the Supreme Court didn't say that it mattered if it was domestic or foreign, because it doesn't matter. As a matter of the reasoning, it doesn't matter. Because of the imputation problem, the attribution problem, and the idea that this policy requirement cannot be cabined, they are requiring organizations to take a pledge affirming a belief as their own, and espousing and adopting that belief as their own, and refraining from doing anything to the contrary or saying anything to the contrary. That's an extraordinary law, and the Supreme Court struck it down as unconstitutional. It appears on its face. Now, I don't know how the government can claw back a law that is struck down by the Supreme Court on its face, arguing now for the first time that there's some lawful application of this law. They specifically in their petition, in their petition to the Supreme Court, they said this is a facial invalidation. That what this court did was facial. And they argued a facial case in the Supreme Court. And now they're coming back having lost to say, wait, wait, it's not facial. We want it to be as applied. We absolutely, we wanted it litigated. That's what we're dealing with. No, no. We want it litigated as applied. They got cert granted as facial. Are you changing your mind about it? We're not. The Supreme Court did. The Supreme Court made this decision. And that decision's got to be respected. And the reasoning of it must be respected as well. What we But at the bottom, the requirement no longer applies to your clients as domestic and your NGOs taking the money from the United States in this program. The context we have now is that total freedom on your part, but your suggestion that the government may not impose on foreign entities with no constitutional rights, the government's view before it gives those foreign entities money because it's possible or maybe is that there is some kind of facial connection with a U.S. entity which wants to espouse a different position in some circumstances even though it's no longer required to. Your Honor, there is. That's what it comes down to. There is not total freedom for these U.S. organizations. That would be an act of our holding in your favor. We're not asking for a holding from this court on some independent constitutional ground. All we're saying is the remedy fashioned here for the unconstitutional law in light of violations of our First Amendment rights, that remedy must address, according to this court in Cooper, both violations and harms. The government concedes at pages 29 and 30 of its brief. It concedes harm. What it says is the harm is incidental. Not as in the meaning of minor, but as in the meaning of secondary. What it says is, never mind the harm, it's secondary. So we have to bring it in. So in closing? In closing, without this injunction, these U.S. organizations will not have a remedy that protects against violations and harm identified by the Supreme Court. Thank you, counsel. Mr. Torrence, you've reserved three minutes for rebuttal. Thank you, Your Honor. The Supreme Court addressed in 2013 an effort to solve a First Amendment problem through affiliates. What the plaintiffs are trying to do now is to create a First Amendment problem with affiliates. It's exactly the opposite situation. They have nothing to do with each other. Was the Supreme Court aware of the foreign affiliates? I don't know whether they were. Well, you read the case, didn't you? Yes, and the case says not a word. You studied the record. He says that every single affiliate involved in the Supreme Court was foreign. Did he misspoke? Did he misspeak? I am sure he did not, but that's not the point. I'm not sure that's the point. I just asked you whether he misspoke. When we addressed — They're all foreign. When we addressed in our briefs the foreign — When the government went up to the Supreme Court, all of the affiliates at issue were foreign. Is that right? I will assume that, but — So wouldn't it also be fair to assume that they had foreign affiliates keenly in their mind — Absolutely not. — just as Roberts did when he wrote this opinion? No, it would not. He wasn't confused that there weren't any foreign affiliates, right? It would not be safe — I don't know what was in his mind, but what I can say is that — He asked you to assume what was in his mind. I can't assume what's in the Chief Justice's mind. Fair enough. When we addressed — when we were talking about affiliates, my adversary has said we were talking — we must have been talking about foreign affiliates. That's not correct, because we weren't talking about specific, actual organizations. We were talking about a mechanism that's — But foreign affiliates — there's no domestic — foreign affiliates are the only affiliates that spread out in this record and have been spread out in this record for the last — for 10 years, you all have been litigating — But they're not the only — — litigating this. Affiliates that fall within that regulatory mechanism, the mechanism that's expressed in the Code of Federal Regulations and in published guidance from the agencies, that regulation is what we were defending. That regulation applies whether it's foreign or domestic. And yes, the Supreme Court said it won't work whether or not the affiliate used to solve the First Amendment problem is foreign or domestic. But that First Amendment problem that underlies that discussion no longer exists. And that's why the Supreme Court's opinion simply does not govern this case. They are free to speak their mind. They are free to affiliate with whomever they want. They are free to say whatever they want about prostitution or sex trafficking. They're free to spend their own money. And if they don't like being affiliated with an organization that says something different, they have the choice, as this Court said in Planned Parenthood, they have the choice to, one, say, that organization doesn't speak for us, or, two, to fund that organization with their own money. And then that organization will no longer have to bear the burden of the policy requirement. That will escape anything to do with the evident hypocrisy. But when the Supreme Court talks about evident hypocrisy, they're not talking about the harm. That's not the First Amendment harm at issue. What they were describing is the reason our alternative failed, not the First Amendment harm, the rejection of our defense to a different First Amendment harm. And that's why it's distinguishable. That's why we ask this Court to vacate the injunction. Thank you, Your Honors. Thank you both for a lively argument. Well, was this case—did you do this case pro bono? Yes, we did. We'd like to thank you. You know, so much of this litigation depends on, you know, the cooperation of firms such as yours. And I know it was a tremendous amount of work and very well briefed. Thank you. Thank you. I take it your work was in the public interest as well. Congratulations. Thank you, everyone.